**GREEN COUNTRY RESTAURANT and United States Fidelity and Guaranty Co., Petitioners,**

v.

**Deborah CARMEN, Respondent.**

**No. 51076.**

Supreme Court of Oklahoma.

June 6, 1978.

Don L. Dees and Glenn P. Bernstein, Tulsa, for petitioners.

E. W. Keller, Oklahoma City, for respondent.

SIMMS, Justice.

Compensation for permanent partial disability (15%) to body as a whole for accidental injury to claimant's low back during covered employment was awarded by the trial judge. On en banc appeal by claimant, this order was affirmed as to compensability, but modified by finding 30% permanent partial disability had resulted from injury. Petitioners, hereafter respondents, seek vacation of this order, reinstatement of the trial judge's order, by reason of asserted lack of competent or relevant evidence to support the award.

There is no factual controversy except as to medical evidence. Respondents complain

disability rating by claimant's medical witness was premature, as opposed to evidence of continuing treatment by respondent's, and another doctor's reported opinion that further treatment was necessary before claimant's condition would stabilize.

Claimant slipped and fell during work (July 5, 1976) and injured her back and right knee, and was examined that night at the emergency room of a local hospital. The examiner noted absence of right patellar reflex, and advised claimant to see Dr. B. if she did not feel better the next day.

Dr. B. examined claimant July 6, 1976 after securing history of injury and complaints. Examination disclosed soreness in right iliolumbar area, with tenderness over lateral femoral cutaneous nerve, on right of anterior superior iliac spine. X-ray examination of lumbar spine was within normal limits and reflexes were normal except for absence of right patellar reflex. Claimant was advised to remain off work two weeks and then return for check of absent patellar reflex. Respondents paid temporary total compensation during this period.

When next examined (July 13, 1976) claimant's principal complaints concerned pain and weakness of right leg. The doctor noted absence of patellar reflex and indication weight bearing intensified pain, and reported disability status should continue since work required claimant to be on her feet. When last examined (July 21, 1976) patellar reflex still was absent, but claimant felt better and was returned to work on trial basis, subject to re-evaluation after a month.

As respondents did not have a job opening, claimant found other employment at lighter work as a clerk-typist in a pharmacy. However, her difficulty with back and knee problems continued. Although temporary total disability had been terminated, the doctor reported (September 15, 1976) claimant was unable to return to full work activity and was kept on partial disability status, to be re-checked after a month. Continued pain and discomfort with absence of patellar reflex necessitated hospitalization for performance of myelogram on October 5, 1976.

All findings were within normal limits, but conservative treatment was continued until October 8, 1976 when discharged for return to work as tolerated. When last seen (November 8, 1976) claimant still experienced difficulty stooping or bending forward, patellar reflex was absent and there was discomfort in right iliolumbar angle. Claimant was to be followed on conservative basis with work activity as tolerated, subject to exploratory laminectomy if unimproved after reasonable time.

Claimant testified after initial treatment by Dr. B. she returned to light work, but saw the doctor regularly until after hospitalization. Her physical problems continued and she saw the doctor each month, being treated only with medication. Pain would strike in the knee and back at the same time, and in January, 1977, claimant quit work upon the doctor's recommendation. After quitting work and staying home claimant did not have as much trouble and treatment may have helped a little, although the knee and back would flare up unpredictably at the same time, so she did not know whether her condition really was better.

Dr. S. examined claimant in January, 1977 after taking history of injury and ensuing treatment. Physical examination and x-rays of lumbar area revealed no abnormalities. Claimant's condition was diagnosed as resolving L-3 nerve root neuropathy, originating in injury which likely stretched the femoral nerve. The doctor had seen several cases completely resolved by conservative treatment, and felt time and continued management by Dr. B. was indicated to resolve her problem. Dr. S. made no reference to disability, while stating prognosis was guarded but favorable.

Claimant was examined by Dr. M. on October 27, 1976 after receiving history of injury and treatment. Based on history of injury and physical findings, including muscle spasm increasing on back motion, and tenderness in right parivertebral lumbar area, the doctor concluded there was nerve root irritation to right lower extremity of

spine. And because of back injury claimant had sustained 30% permanent partial disability to body as a whole. Respondents objected to Dr. M.'s medical evidence as incompetent for prematurity of evaluation.

Although not appearing of record, respondents acknowledge the case was set for hearing November 1, 1976 on motion for further temporary, and determination of permanent partial disability. No reason for delay appears, but the case was not heard until February 9, 1977. Counsel then advised the court the matter was to be heard for adjudication of permanent partial disability and further medical treatment. Claimant attempted to work after release by Dr. B. as no longer temporary totally disabled but continued to receive treatment, even after forced to quit work in January, 1977. Neither party offered medical evidence reflecting temporary total disability. The court observed the fact of continuing treatment would not preclude finding stability of her condition, but might indicate an effort to seek relief from pain of existing disability.

The sole argument attacks competency of medical evidence to support this award in the following particulars: (1) Dr. M.'s disability evaluation was premature particularly in view of claimant's evidence relating inability to work; (2) Claimant was continuing treatment under Dr. B.; (3) Dr. S. considered further treatment necessary to stabilize claimant's condition and thus did not evaluate disability. Upon authority of *Collins Const. Co. v. Berry*, Okl., 370 P.2d 11 (1962), respondents insist objection to Dr. M.'s report for "staleness" was valid, since claimant testified her condition improved thereafter.

Neither the argument, nor the conclusion reached, are sound. Although urging incompetency of Dr. M.'s medical opinion to support this award, respondents acknowledge the trial court's initial award (15%) was fair and justified under the evidence. Thus it appears respondents' real complaint concerns amount of the award, rather than claimed incompetency of medical evidence upon which the award was based. Respon-

dents do not explain their reasoning why medical evidence which was considered competent to support the finding of 15% permanent partial disability, is rendered incompetent to support finding of a greater degree of permanent partial disability.

Further argument concerning claimed incompetency of medical evidence is predicated upon claimant's testimony she had gotten better and had less trouble since quitting work and remaining at home. Respondents' interpretation points to this as conclusively proving disability had lessened since examination by Dr. M. Whether this evidence was to be considered as showing lessening of disability which prevented painful employment, rather than showing, as indicated by other testimony, that physical problems were not so pronounced while claimant remained at home and inactive, presented a question of fact.

■ The only issue concerned extent of disability. State Industrial Court determined from this evidence that claimant's physical disability for gainful employment had not lessened. Determination of this fact question rested exclusively with State Industrial Court, whose findings will not be disturbed on review, when supported by any competent evidence. *Goombi v. Trent*, Okl., 531 P.2d 1363 (1975).

Other argument relating to claimed prematurity of Dr. M.'s disability evaluation, and error in the en banc increase of permanent partial disability, do not require extended discussion. Respondents cited *Collins Const. Co. v. Berry, supra,* to support claim no competent disability rating could be evaluated until claimant's condition stabilized. In *Collins, supra,* syllabus 2 states:

"An award of the trial tribunal, asserted to have been prematurely entered, will not be vacated on review, where the record fails to disclose that petitioner did, by an appropriate application to the trial judge or to the State Industrial Court en banc, seek to present further evidence, or to exclude, in whole or in part, that which had been admitted, and it does not otherwise appear that there has been a substantial failure to afford petitioner a full

and complete hearing on the issues raised in the proceeding."

Respondents also argue vacation and remand should be ordered to afford parties opportunity to present "fresh, competent medical evidence to the Court" or, alternatively, appoint independent medical examiner. This claim does not comport with principles stated in syllabus 2 of *Collins,* above quoted.

Settled law declares conflicting evidence as to cause and extent of disability present a fact question, determination of which by State Industrial Court will not be disturbed on review. Extent of disability may be determined at any degree within range expressed by medical experts. *AMF Tubescope v. Hatchel,* Okl., 547 P.2d 374 (1976). There was competent medical evidence which supports the award.

The proceeding is free of error of law and accordingly, the award is sustained.

ALL THE JUSTICES CONCUR.