2007 OK 28

**Sally EMERY, Petitioner,**

v.

**CENTRAL OKLAHOMA HEALTH CARE, Clarendon National Insurance Company, and the Workers' Compensation Court, Respondents.**

**No. 102,286.**

Supreme Court of Oklahoma.

May 1, 2007.

Walt Brune, Walt Brune, P.C., Ponca City, OK, and Fred L. Boettcher and K. Wayne Lee, Boettcher Law Office, Inc., Ponca City, OK, for Petitioner.

Gary G. Prochaska, Foshee & Yaffe, Oklahoma City, OK, for Respondents.

COLBERT, J.

¶1 Claimant, Sally Emery, seeks certiorari review of an opinion of the Court of Civil Appeals which sustained an order of the Workers' Compensation Court denying her claim for additional temporary total disability benefits against Employer, Central Oklahoma Health Care. The Workers' Compensation Court found that Claimant had sustained a change of condition for the worse to her back and ordered Employer to provide additional medical treatment but denied further temporary total disability benefits. We hold that Claimant's status as permanently totally disabled allows for an award of additional treatment based upon proper evidence, but precludes a further award of benefits for temporary total disability.

¶2 Claimant sustained an injury to her lumbar back on October 16, 1997, while working as a nurse for Employer. The Workers' Compensation Court awarded her 20% permanent partial disability in May 1999. Claimant retired after the injury because of her health and began receiving social security disability benefits in 1999.[1] Claimant then sustained a change of condition for the worse, for which Employer voluntarily paid temporary total disability and provided medical treatment. The court awarded Claimant an additional 12% permanent partial disability in September 2001.

¶3 Claimant filed a claim the next year against the Multiple Injury Trust Fund and was found to be permanently and totally disabled based on the combination of the 1997 injury and a prior injury. Claimant and the Fund later agreed to convert that benefit to a lump sum of $81,000. Their joint petition to that effect was approved by the court on April 8, 2004, and Claimant received three $27,000 payments on April 8, 2004, October 8, 2004, and April 8, 2005.

¶4 On November 1, 2004, Claimant filed a motion seeking additional medical benefits and temporary total disability benefits based on a change of condition for the worse. Claimant's expert stated that she was tempo-

rarily totally disabled and needed medical treatment in the form of epidural steroid injections, while Employer's expert concluded that she had not sustained a change of condition for the worse and needed only continuing medical maintenance. The court-appointed and treating physician, Michael J. Carl, M.D., determined that Claimant had suffered an aggravation of her condition and recommended epidural steroid injections to stabilize her condition. Dr. Carl did not conclude that Claimant was temporarily totally disabled but, instead, specified permanent work restrictions almost identical to those he had previously imposed.

¶5 The trial court determined that Claimant had sustained a change of condition for the worse and ordered Employer to provide her with additional medical treatment including the recommended epidural steroid injections. The court also required Employer to replace Claimant's lift chair. The court denied, however, Claimant's request for temporary total disability benefits. That decision was affirmed by the Workers' Compensation Court sitting *en banc*. *See* Okla. Stat. tit. 85, § 3.6(A) (2001).

¶6 Claimant appealed. The Court of Civil Appeals first issued an opinion vacating the Workers' Compensation Court's order and remanding for the entry of an order commencing temporary total disability payments. On Employer's petition for rehearing, however, the Court of Civil Appeals withdrew that opinion and issued a new opinion sustaining the Workers' Compensation Court's order. Claimant filed a petition for certiorari which we have previously granted.

## STANDARD OF REVIEW

¶7 We are bound by *stare decisis* to apply the any-competent evidence standard of review to the factual determinations of the Workers' Compensation Court sitting *en banc*. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶2, 684 P.2d 548, 549. Under this standard, we review the facts only to deter-

---

1. Claimant's retirement is mentioned only to provide a full account of the procedural history; we may not consider retirement in determining workers' compensation benefits. Okla. Stat. tit.

85, § 45 (2001); *see also City of Duncan v. Bingham*, 1964 OK 165, 394 P.2d 456; *Crane Carrier v. Ray*, 1993 OK CIV APP 120, ¶21, 857 P.2d 826, 829.

mine whether the record contains any competent evidence to support the court's decision, not whether the preponderance of the evidence supports the decision. *Id.* ¶ 12, 684 P.2d at 552. We review questions of law, however, *de novo. Mangrum v. Fensco, Inc.,* 1999 OK 78, ¶ 4, 989 P.2d 461, 462.

## DISCUSSION

¶ 8 The record contains competent evidence to support the Workers' Compensation Court's determination that Claimant has suffered a change of condition for the worse and needs additional medical benefits in the form of epidural steroid injections. Employer has not appealed from that determination. In addition, the record supports the court's factual conclusion that, despite her change of condition for the worse, Claimant has not established an additional period of temporary total disability.

█ ¶ 9 The dispositive issue, however, is whether additional medical treatment due to a change of condition for the worse and temporary total disability status are inexorably linked as a matter of law.[2] Claimant contends that they are and that the court erred when it failed to award temporary total disability benefits along with the additional medical benefits.[3] Employer, on the other hand, contends that Claimant cannot be more than permanently totally disabled and that she is not entitled to additional temporary total disability benefits when there is no evidence that her change in condition has left her other than permanently and totally disabled.

¶ 10 The statutory basis for an increase in benefits is found in section 28 of the Workers' Compensation Act, which permits the Workers' Compensation Court to stop, increase, or decrease a claimant's compensation if there is a change of condition. Okla. Stat. tit. 85, § 28 (2001).[4] Section 28 requires no particular combination of factors to support an award for increased benefits, but this Court has held that, once a claimant's permanent disability has been established, the claimant is not normally entitled to any additional medical treatment beyond that originally ordered unless he or she establishes a change of condition for the worse because the "healing period" of temporary total disability has recurred.

A permanent disability award constitutes a solemn adjudication that the worker's healing period has come to an end and his condition or state of health has reached the very optimum that is *then* medically attainable. The law assumes that a condition of health, once adjudged to be permanent, is stationary. Stationary conditions generally require no medical care or maintenance. The moment permanent disability begins, the right to receive medical treatment ceases by operation of law except, of course, for certain limited, tightly structured and explicitly authorized situations. Permanent disability, partial or total, is *presumed* to continue *until recurrence* of temporary disability *is established.* In contrast, temporary disability, once shown, is not *presumed to extend for any* length of time; its duration must be proved from the beginning to its very end. Once adjudged to have permanent disability, a worker is entitled to medical attention only upon *establishing recurrence of the postaward healing period in a reopening proceeding.* ...

*Bill Hodges Truck Co. v. Gillum,* 1989 OK 86, ¶ 6, 774 P.2d 1063, 1065–66 (footnotes omitted).

---

2. The Workers' Compensation Court's reason for denying temporary total disability benefits—because Claimant's work restrictions were unchanged—was flawed. *Okla. Gas & Elec. Co. v. Black,* 1995 OK 38, ¶ 8, 894 P.2d 1105, 1107. We will affirm a correct judgment, however, even if it is based on an incorrect legal analysis. *Harvey v. City of Okla. City,* 2005 OK 20, ¶ 12, 111 P.3d 239, 243.

3. Temporary total disability benefits would be $389.01 per month, while permanent total disability benefits through the Multiple Injury Trust Fund are $213.00. If Claimant was awarded temporary total disability benefits, therefore, she would receive the difference for the period of her temporary total disability. *See Lamphear v. B.F. Goodrich,* 1998 OK CIV APP 85, ¶ 16, 970 P.2d 615, 618.

4. This statute has been amended since Claimant's initial injury and adjudication, but the relevant language was unchanged.

¶ 11 Despite its broad language, *Hodges* is not directly applicable to this case for two reasons. First, the procedural posture of *Hodges* was quite different. Although the claimant in that case had been adjudicated permanently totally disabled and was seeking additional medical benefits in the form of a heart transplant, he had made no attempt to establish a change of condition. Instead, the claimant argued that he was entitled to the additional medical benefits under the order which adjudicated him permanently disabled and required the employer to continue to pay for "reasonable and necessary medical expenses." The Court's statement was directed to the claimant's assertion that he should be entitled to significantly greater medical benefits than those originally contemplated without establishing a change of condition for the worse.

¶ 12 Second, the holding in *Hodges* was based on cases involving claimants whose permanent level of disability had not yet been determined or who were only partially permanently disabled.[5] That holding, therefore, was not made in contemplation of the kind of scenario before us now. Indeed, if *Hodges* was the only case we could consider, even medical care in the form of prescriptions to maintain a claimant's condition would be authorized only rarely. Nevertheless, we have recognized numerous conditions that require ongoing and evolving medical maintenance. Medical treatment for the purposes of maintenance is routinely authorized, as it has been in the case before us today. For example, in *Armstrong v. Unit Drilling*, 2002 OK 17, 43 P.3d 383, we held that a claimant who had suffered a work-related heart attack was entitled to continuing medical maintenance in the form of prescription medication without showing a recurrence of temporary disability.[6] We distinguished *Hodges* on the

basis that the organ transplant requested in that case "was not the sort of service the law authorizes to be awarded without a showing of a change of condition." *Id.* ¶ 10, 43 P.3d at 385.

¶ 13 It is sufficient to say that, despite the absolute language employed in *Hodges*, we have rarely applied it as unconditionally as its language would appear to dictate. Nevertheless, the language remains and has created the situation before us now. The unfortunate result of the emphasized passage in *Hodges* is that its literal application in a situation like this-where the claimant is permanently totally disabled with no indication that she will ever again be anything other than permanently totally disabled-results in either (1) a complete denial of additional and needed medical treatment or (2) the absurdity of declaring a claimant temporarily totally disabled just because she is in need of medical attention.

¶ 14 The Court of Civil Appeals has twice been confronted with this issue, with diametrically opposed results. In the first case, *Lamphear v. B.F. Goodrich*, 1998 OK CIV APP 85, 970 P.2d 615, the Court concluded that the claimant was entitled to receive compensation from the employer for temporary total disability. The case before us today on certiorari represents the second time the Court of Civil Appeals has considered the issue. This time it has rejected *Lamphear.*

¶ 15 In *Lamphear*, the Court of Civil Appeals held that a permanently totally disabled claimant who had established a change of condition for the worse and a need for additional medical treatment was entitled to benefits at the higher temporary totally disabled rate for the duration of his "temporary" total disability. The Court concluded that the fact that Claimant was receiving benefits for permanent total disability from

5. *See Hondo Petroleum Co. v. Piearcy*, 1962 OK 216, 376 P.2d 1012 (permanent partial disability); *Capitol Well Servicing Co. v. Levescy*, 1962 OK 118, 371 P.2d 905 (permanent partial disability); *Collins Const. Co. v. Berry*, 1962 OK 67, 370 P.2d 11 (temporary disability); *Pruitt v. Mid–Continent Pipe Line Co.*, 1961 OK 96, 361 P.2d 494 (temporary disability).

6. *Armstrong* presented a factual "wrinkle" in that the original award did not reflect the claimant's uncontested request for continuing medical maintenance, but the employer paid for his prescriptions for six years anyway, reflecting the parties' apparent understanding that the court had intended that result. Part of this Court's reasoning, therefore, was that the claimant was not asking for anything to which he was not already entitled. *Armstrong v. Unit Drilling*, 2002 OK 17, 43 P.3d 383.

the Special Indemnity Fund did not preclude him from establishing additional periods of temporary total disability and, ultimately, an additional level of permanent disability against his employer. The Court described this as a "lateral modification."

While one purpose of the Special Indemnity Act, which is intended to encourage employment of physically impaired workers, is to protect employers from liability for combination of old and new disabilities, that Act does not relieve employers of responsibility for an employee's disability resulting from his last injury. Holding Employer liable for Claimant's temporary total disability, which resulted from recurrence of the back injury sustained while working for Employer, is consistent with the purposes of the Workers' Compensation Act, specifically that part concerning Fund.

*Id.* ¶ 14, 970 P.2d at 618 (citation omitted).

¶ 16 In his dissent in *Lamphear*, Judge Buettner made a cogent, fact-based argument:

There does not appear to be any rationale or legal basis to change the status of a claimant from permanently totally disabled to temporarily totally disabled because his condition has worsened. There is no dispute that Claimant was permanently totally disabled since 1990. There is no argument that the additional medical treatment that Claimant sought and received in September 1991 would change that status. Even though Claimant did undergo additional surgeries and required healing time, he was paid benefits during the entire time because he was permanently totally disabled. There was no expectation that his total disability would be temporary rather than permanent.

*Id.* ¶ 1, 970 P.2d at 619 (dissent by Buettner, P.J.) In the case before us today, the Court of Civil Appeals adopted Judge Buettner's reasoning to hold that Claimant could not receive additional temporary total disability benefits. We agree that this is the better approach.

■ ¶ 17 Claimant, who was previously adjudicated permanently and totally disabled,

presented competent evidence that she has suffered a change of condition for the worse and is in need of additional medical benefits. That fact, however, does not mandate that she also receive additional benefits for temporary total disability. Temporary incapacity is necessary to obtain temporary total disability benefits because these benefits must cover a defined period and end when permanent disability can be determined. *Bama Pie, Inc. v. Roberts,* 1977 OK 100, ¶¶ 12–13, 565 P.2d 31, 34. The purpose of temporary total disability is to replace the loss of wages during the temporary healing period. *Gray v. Natkin Contracting,* 2001 OK 73, ¶ 13, 44 P.3d 547, 550. It has no application where before, during, and after medical treatment is provided, the injured worker is permanently and totally disabled. Instead, the Legislature has provided the long-term remedy of wage replacement through an award for permanent total disability for the worker who is permanently and totally disabled and no longer able to work.

■ ¶ 18 Permanent total disability is the "incapacity because of accidental injury or occupational disease to earn any wages in any employment for which the employee may become physically suited and reasonably fitted by education, training or experience. . . ." Okla. Stat. tit. 85, § 3(20) (Supp.2005); *Mangrum,* 1999 OK 78, ¶ 6, 989 P.2d at 463 (an inability to "return to gainful employment"). Even permanent total disability is not absolute and immutable and is "not synonymous with total dependence." *Natkin Contracting,* 2001 OK 73, ¶ 16 n. 17, 44 P.3d at 552 n. 17, *but see Nat'l Zinc Co. v. Thomas,* 1976 OK 105, ¶ 18, 554 P.2d 1, 5 ("The ultimate in disability is permanent total."). It can range from the minimum legal definition up to death. Claimant's evidence establishes that she has suffered a change in condition for the worse through an increase in disability, *see Bama Pie, Ltd. v. Raes,* 1995 OK 122, ¶ 8, 905 P.2d 811, 814, and is in need of additional medical treatment. She did not, however, present competent evidence to remove her from the range of permanent and total disability.[7]

¶ 19 The Workers' Compensation Court correctly ordered Employer to pay for Claimant's additional medical treatment and denied Claimant's request for additional compensation at the higher rate for temporary total disability.

THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED AND THE ORDER OF THE WORKERS' COMPENSATION COURT IS SUSTAINED.

CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., WATT, TAYLOR, COLBERT, JJ.

CONCUR IN RESULT: LAVENDER, OPALA, KAUGER, JJ.

CONCURS IN PART; DISSENTS IN PART: HARGRAVE, J.

OPALA, J., with whom LAVENDER and KAUGER, JJ., join, concurring in result

While I join as legally sound the court's holding that judicial recognition of need for medical treatment to be provided for a claimant previously adjudged to be permanently totally disabled does not in itself afford sufficient probative basis for granting such claimant an additional award of temporary total disability, I do not accede to the view that one who, like this claimant, is permanently totally disabled cannot, as a matter of law, ever qualify by proper medical proof for a finding of a change in his status to that of temporary total disability. See *McClure v. Special Indemn. Fund*, 1970 OK 194, 475 P.2d 811, 812.

---

7. We recognize, however, that there may be situations where a claimant's level of permanent disability may have *improved*. Okla. Stat. tit. 85, § 28 (2001). It is conceivable, therefore, that a claimant who has been previously adjudicated permanently totally disabled could be subsequently adjudicated as less than permanently totally disabled *and* in need of additional medical treatment and an additional healing period, warranting an award of additional temporary total disability benefits. *See* Okla. Stat. tit. 85, § 22 (Supp.2006). Our holding today, therefore, should not be interpreted as precluding an award of additional temporary total disability benefits in all cases where a claimant has been adjudicated permanently totally disabled.